# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SEAN GUNDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 13-cv-3792 |
| v. | ) |
| | ) Judge Amy J. St. Eve |
| JEFF PHARIS, PAUL BROCK, | ) |
| DEE BARBER, and ELGIN MENTAL | ) |
| HEALTH CENTER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Sean Gunderson ("Plaintiff") brings this action[1] against Defendants Jeff Pharis, Paul Brock, Dee Barber, and Elgin Mental Health Center ("EMHC") (collectively, "Defendants") alleging violations of 42 U.S.C. § 1983, and The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §2000cc *et seq*. Defendants move to dismiss Plaintiff's First Amended Complaint ("FAC") in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6). Defendants also assert that the Court should abstain pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). For the following reasons the Court grants Defendants' motion to dismiss.

## BACKGROUND

### I. EMHC

The State of Illinois, through its Department of Health Services ("IDHS"), has held Plaintiff at multiple mental health facilities since 2005. (R. 18, FAC ¶¶ 2; 9-11.) In 2005, Plaintiff was found not guilty by reason of insanity ("NGRI") by an Illinois court. (*Id*. ¶ 9.) As

---

[1] Plaintiff raised these claims in a 2012 Complaint he brought in the district court. (*See Gunderson v. Brock*, Case No. 12-cv-6768 (N.D. Ill.).) The district court granted Plaintiff's motion to dismiss without prejudice (R. 19) and Plaintiff never filed an amended complaint in that case.

required under 735 ILCS 5/5-2-4(a), the state court referred Plaintiff to the IDHS for an evaluation. The IDHS determined that Plaintiff was in need of mental health services on an in-patient basis. (*Id*. ¶¶ 9-10.) Since September 2011, Plaintiff has been a patient at the Elgin Mental Health Center ("EMHC"). (*Id*. ¶11.)

The EMHC is operated by the Illinois Department of Health and Human Services and is located in Elgin, Illinois. (*Id*. ¶¶ 2-3.) Jeff Pharis serves as the director of the Forensic Treatment Program at the EMHC, Paul Brock serves as the administrator of the EMHC, and Dee Barber serves as the Director of Pastoral Care Services from the EMHC. (*Id*. ¶¶ 4-6.)

Every 60 days, pursuant to 730 ILCS 5/5-2-4(a), Defendant Pharis is required to file a treatment plan in writing with an Illinois court detailing: (a) an assessment of Plaintiff's treatment needs, (b) a description of the services recommended for Plaintiff's treatment, (c) the goals of each type of element of service, (d) an anticipated timetable for the accomplishment of Gunderson's goals, and (e) a designation of the qualified professionals responsible for the implementation of the plan. (*Id*. ¶ 16.) This treatment plan also must include an opinion as to whether Gunderson still needs mental health services on an inpatient basis. (*Id*. ¶ 17.)

## II. Plaintiff's Access to Legal and Educational Resources

Plaintiff alleges that the law library at the EMHC is inadequate and consists only of the Illinois Complied Statutes for the years 1994, 1998, and 2000, and a law dictionary. (*Id*. ¶ 20.) Plaintiff further alleges that the EMHC does not maintain or make available (a) the Illinois Administrative Code, which Plaintiff contends contains numerous sections that directly affect patients at EMHC; (b) current Illinois Compiled Statutes; (c) relevant and current case law; or (d) the U.S. Code. (*Id*. ¶ 21.) According to Plaintiff, while other relevant and current legal documents are available through the Internet, residents at EMHC are not permitted to access

websites that provide legal materials. (*Id.* ¶¶ 21-22.) In 2011, Plaintiff filed a civil complaint *pro se* against EMHC and a number of its employees. (*See Gunderson v. Malis, et al.*, 11-cv-8562 (N.D. Ill.).) The district court dismissed that complaint and entered judgment in February 2012. (First Am. Compl. ¶ 26.)[2] Plaintiff never appealed the district court's dismissal of his 2011 complaint. Plaintiff alleges that the district court would not have dismissed this 2011 complaint if he had access to adequate legal resources at the EMHC law library. (*Id.* ¶ 27.)

Plaintiff attends Wilbur Wright College, one of the City Colleges of Chicago, through the College Distance Learning Program ("CDL") that EMHC offers. (*Id.* ¶ 28-31.) EMHC has a computer lab with seven computers for participants in the CDL program to access the Internet. (*Id.* ¶ 32.) Access in the computer labs is available from 8:45 a.m. to 11:00 a.m. and from 12:45 p.m. to 3:15 p.m. Monday through Friday, and is closed on federal and state holidays. (*Id.* ¶ 34.) Plaintiff alleges that many, if not all, of the computers in the EMHC computer lab lack the minimum system requirements prescribed by Wright College for those accessing educational materials through a learning distance program. (*Id.* ¶ 33.) Plaintiff alleges that Defendants refuse to allow him to access the Internet using his personal computer and that this precludes him from making meaningful progress toward his college degree. (*Id.* ¶ 38.) Plaintiff alleges that "on information and belief, other patients at the EMHC have been permitted to access the Internet through their own personal computers in order to participate in the CDL." (*Id.* ¶ 37.)

## III.    Plaintiff's Religious Faith

Plaintiff has practiced Hinduism for nearly a decade and has requested access to a Hindu spiritual leader. (*Id.* ¶ 39-41.) In 2012, the EMHC provided Plaintiff with a Hindu spiritual

---

[2] Plaintiff alleges that the court dismissed the 2011 Complaint for failure to state a claim on which relief could be granted. (First Am. Compl. ¶ 26.) The district court's order, however, states, "the complaint is dismissed pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and *Nelson v. Murphy*, 44 F.3d 497 (7th Cir. 1995)." (Case No. 11-cv-8562 (N.D. Ill.) R. 10.)

3

leader who spoke Gujarati as his primary language and knew very little English. (*Id*. ¶ 44.) Plaintiff alleges that this language barrier prevented the spiritual leader from administering proper instruction in guided meditation. (*Id*. ¶ 44-45.) In August of 2013 the EMHC provided Plaintiff with access to a new spiritual leader affiliated with the International Society for Krishna Consciousness ("ISKC"), which Plaintiff alleges is not the same religion as Hinduism. (*Id*. ¶ 46-47.) Plaintiff also alleges that the ISKC spiritual leader was not able to provide instruction on yoga or meditation – acts which Plaintiff contends are requirements for practicing Hinduism. (*Id*. ¶ 48.)

In addition, Plaintiff alleges that sacred Hindu texts, including the Kama Sutra, compel Hindus to engage in sexual intercourse. (*Id*. ¶¶ 52-54.) Plaintiff contends that on September 7, 2012, he submitted a request to Defendant Pharis seeking permission to have conjugal visits but that Pharis has not responded. (*Id*. ¶¶ 58-60.)

Plaintiff performs meditation and yoga multiple times each day: when he wakes up, shortly after lunch, before dinner, and before he goes to bed. (*Id*. ¶ 62.) He maintains that he performs meditation and yoga in practice with his Hindu faith. (*Id*. ¶¶ 61-62.) Plaintiff alleges that he attempts to perform a 90-minute yoga and meditation session shortly after waking in his room at 5:45 a.m. (*Id*. ¶ 64.) According to Plaintiff, the EMHC has prevented him from completing this session because Defendant Pharis institutes patient lockouts between 6:45 a.m. to 8:45 a.m. every weekday and requires all patients to convene in a communal room. (*Id*. ¶ 67.) Plaintiff requested that Defendant Pharis curtail the lockout to accommodate his morning yoga and meditation, but has not received a response to his request. (*Id*. ¶ 74-75.)

## IV. Plaintiff's Personal Property

Plaintiff alleges that he is entitled to possess personal property, and that if EMHC staff denies a request for personal property, it should provide him with a notice of restriction of rights. (*Id*. ¶¶ 77-78.) Plaintiff contends that if EMHC staff restricts his right to personal property, he is entitled to the opportunity to submit that decision to an EMHC staff member who did not play any part in the initial decision. (*Id*. ¶ 79.) Plaintiff contends that he requested a personal printer in November 2011 and an air purifier in December 2011. (*Id*. ¶¶ 80, 82.) Plaintiff alleges that Defendant Pharis denied these requests without providing Plaintiff with an opportunity to appeal the decision to an impartial member of the EMHC staff. (*Id*. ¶ 80-85.)

## V. First Amended Complaint

Based on these allegations, Plaintiff asserts seven counts against Defendants: (i) six counts for violations of 42 U.S.C. § 1983, and (ii) one count for violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") under 42 U.S.C. § 2000cc-1. The 1983 claims assert restriction from accessing the courts (Count I), denial of educational opportunities (Count II), denial of a Hindu religious leader (Count III), denial of conjugal visitation as a restriction on the practice of Hinduism (Count IV), denial of yoga and meditation as restrictions on the practice of Hinduism (Count V), and denial of personal property without due process (Count VI). The RLUIPA claim (Count VII) alleges that the denial of uninterrupted yoga and meditation in the morning and of conjugal visitation imposes a substantial burden on Plaintiff's exercise of his religion.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a

5

complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a complaint must contain sufficient factual content "to allow the court 'to draw a reasonable inference that the defendant is liable for the misconduct alleged.'" *Charleston v. Board of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013). In ruling on a Rule 12(b)(6) motion, district courts may also consider documents attached to the pleadings without converting the motion into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the claims. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012). Additionally, although a plaintiff need not plead facts in the complaint to defeat potential affirmative defenses, where "the allegations of the complaint itself set forth everything necessary to satisfy [an] affirmative defense," the plaintiff pleads himself out of court. *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

**ANALYSIS**

Defendants seek dismissal based on (1) the *Younger* abstention doctrine, (2) Plaintiff's failure to state a claim on which relief can be granted, and (3) qualified immunity. The Court addresses Defendants' arguments and Plaintiff's claims in turn.[3]

**I.** *Younger* **Abstention**

Defendants assert that the Court should decline to exert jurisdiction over this matter pursuant to the doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). In *Younger*, the Supreme Court held that absent unusual circumstances a federal court must refrain from enjoining ongoing state criminal proceedings. The scope of the doctrine has been expanded to include noncriminal state judicial proceedings. *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982). The Seventh Circuit has applied *Younger* to NGRI detainees challenging the conditions of their confinement. *Nelson v. Murphy*, 44 F.3d 497 (7th Cir. 1995).

The plaintiffs in *Nelson* were found to be NGRI and committed to the EMHC. *Id.* at 499. The EMHC implemented new restrictions that limited the plaintiffs' ability to leave EMHC and to move unaccompanied throughout EMHC's grounds. *Id.* The plaintiffs challenged these new restrictions pursuant to 42 U.S.C. § 1983. *Id.* The Seventh Circuit held that the claims were barred under *Younger* because of the ongoing supervisory role of the state court pursuant to 730 ILCS 5/5-2-4(b). *Id.* at 501-02. The Seventh Circuit recognized that "Illinois requires the criminal court to supervise the confinement of persons found [NGRI]." *Id.* at 501. The court further held that "[t]he cases pending in the courts of Illinois are continuations of the original

---

[3] Because the Court disposes of Plaintiff's claims based on *Younger* and Fed. R. Civ. P. 12(b)(6), it does not address Defendants' qualified immunity arguments. Further, Plaintiff acknowledged in his response that "to the extent the FAC seeks damages against Defendants, it does so only in Defendants' individual, not official, capacities." (Resp. at 19.)

7

criminal prosecutions, and preserving a state's right to litigate criminal cases in its own courts is the core of the *Younger* doctrine." *Id.* at 501.

Every 60 days, 730 ILCS 5/5-2-4(b) requires Defendant Pharis to file a treatment plan in writing with an Illinois court detailing: (a) an assessment of Plaintiff's treatment needs, (b) a description of the services recommended for Plaintiff's treatment, (c) the goals of each type of element of service, (d) an anticipated timetable for the accomplishment of Gunderson's goals, and (e) a designation of the qualified professionals responsible for the implementation of the plan. (*Id.* ¶ 16.) This treatment plan must also include an opinion as to whether Gunderson is still in need of mental health services on an inpatient basis. (*Id.* ¶ 17.) The report "may also include unsupervised on-grounds privileges" but only if they have been approved by the court. 730 ILCS 5/5-2-4(b). The state court may further impose "such conditions … as the court may deem appropriate and necessary to reasonably assure the defendant's satisfactory progress in treatment and the safety of the defendant and others." *Id.* Finally, the patient may file a petition for treatment plan review, upon receipt of which the state court "shall set a hearing to be held within 120 days." 730 ILCS 5/5-2-4(e).

Defendants assert that Counts II (denial of educational opportunities), IV (denial of conjugal visitation as a restriction on the practice of Hinduism), V (denial of yoga and meditation as restrictions on the practice of Hinduism), and VII (Violation of RLUIPA) "involve conditions appropriate and necessary to reasonably assure the Plaintiff's satisfactory progress in treatment and the safety of himself and others." (R. 32, Reply at 2.) Defendants argue that these counts address elements of Plaintiff's treatment plan, and are not properly before this Court pursuant to *Younger*. The Court agrees.

In Count II, Plaintiff seeks use of his personal computer to access the internet outside of the computer lab's hours in order to complete his coursework for his CDL program. As Defendants argue, such "unfettered computer access presents a multitude of security concerns, particularly in this type of mental health facility." (Reply at 2.) Further, computers are identified as a "Restricted Item" in the "Patient Information Booklet" that Plaintiff attached to the FAC. (R. 18-1 at 8.) Ill. Admin. Code Title 59, Part 110.5 defines restricted items as a "lawful items that may be returned to the patient or his/her designee upon discharge but are restricted in accordance with subsection (a)(1). Such items shall be restricted from being in the possession of the patient while a patient is at the facility." Thus, this restriction falls under the Defendants' interest in assuring the safety of Plaintiff and others at the EMHC.

In Counts IV and VII, Plaintiff contends that the Defendants have denied his constitutional right to "unimpeded, private conjugal visitation with a person of his choice" (First Am. Compl. ¶ 111.) 730 ILCS 5/5-2-4(b) provides that Plaintiff is not entitled to such a privilege "except by a plan as provided in this Section." Further, restrictions on such visits also invoke Defendants' interest in assuring the safety of the Plaintiff and others at the EMHC. Counts V and VII allege that the EMHC's mandatory communal dayroom sessions deny Plaintiff his right to practice yoga and meditation in keeping with his Hindu faith. These sessions, which coincide with the daily lockouts of residents from their rooms, fall under the "therapeutic milieu[4]" portion of the EMHC's treatment as described in the Patient Information Booklet. (R. 18-1 at 3.)

In determining whether abstention is warranted, a court must find three factors: (1) the judicial or judicial in nature state proceedings must be ongoing, (2) the proceedings must

---

[4] The Patient Information Booklet describes the "therapeutic milieu" portion of the treatment plan as "interacting on the unit with other people and taking part in the activities of this group living environment."

9

implicate important state interests, and (3) there must be an adequate opportunity in the state court proceedings to raise constitutional challenges. *Barichello v McDonald*, 98 F. 3d 948, 955 (7th Cir. 1996). As *Nelson* instructs, Plaintiff has not properly brought these counts in federal court. The state court maintains ongoing supervision of Plaintiff pursuant to his NGRI finding and 730 ILCS 5/5-2-4. These proceedings also implicate important state interests. As the court in *Barichello* stated, "[w]e have no doubt that the protection of the community from mentally ill persons with violent criminal tendencies is an important, not to say compelling state interest." 98 F. 3d at 955. Third, there is an adequate opportunity for Plaintiff to challenge his treatment plan in a state court proceeding as the statute allows him to file a petition with the state court for a review of his treatment plan. 730 ILCS 5/5-2-4(e).

For these reasons, the Court grants Defendants' motion to dismiss Counts II, IV, V[5], and VII pursuant to the *Younger* doctrine.

## II.  Failure to State a Claim upon Which Relief Can Be Granted

### A.  Denial of Access to the Courts (Count I)

In Count I, Plaintiff alleges that Defendants have denied him access to the courts because of the inadequacy of the law library at EMHC and because Defendants do not permit residents at EMHC to access web sites that provide legal materials. (FAC ¶¶ 20-22.) Plaintiff alleges that this denial of access resulted in the dismissal of a *pro se* civil complaint that he filed in 2011. (*Id*. ¶¶ 26-27.) Plaintiff seeks (1) compensatory and punitive damages, and (2) an order that Defendants Pharis, Brock, and the EMHC provide him with access to sufficient legal resources

---

[5] In addition to not being properly before the Court, Plaintiff's claims in Counts IV and V are a stretch. If the Court granted the relief that Plaintiff seeks in Count IV, the Court's Order would likely generate a flood of religious conversion (at least among involuntarily committed individuals) claims. With respect to Count V, if Plaintiff wishes to complete his 90-minute morning yoga and meditation session before the 6:45 a.m. lockout period, Plaintiff certainly can start his session earlier in the morning.

to allow him to "understand his legal rights and the proper process for redressing those rights." (*Id.* ¶ 91.)

The due process clause of the Fourteenth Amendment guarantees state prisoners access to the courts to present allegations of infringement of constitutional rights. *See Bounds v. Smith*, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). Access to adequate law libraries is one acceptable method of assuring the meaningful access to courts under the Fifth Amendment. *Id.* at 1498. Access to legal materials, however, is required only for unrepresented litigants. *Campbell v. Clarke*, 481 F.3d 967, 968 (7th Cir. 2007); *see also DeMallory v. Cullen*, 855 F.2d 442, 446 (7th Cir. 1988) (state officials must provide inmates with either adequate law libraries or personal assistance of legally trained personnel, but not both). To the extent that Plaintiff alleges an ongoing denial of access to the courts based on inadequate legal resources at the EMHC, that claim fails because Plaintiff is now represented by counsel.

To state an access-to-courts claim, Plaintiff "must allege a nonfrivolous, underlying claim that the defendants obstructed him from pursuing." *Phillips v. Wexford Health Sources, Inc.*, 522 F. Appx 364, 367-368 (7th Cir. 2013) (citing *Christopher v. Harbury,* 536 U.S. 403, 415 (2002)). Plaintiff "cannot establish relevant actual injury simply by establishing that his [facility's] law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). Rather, he must "go one step further and demonstrate that the alleged shortcomings in the library … hindered his efforts to pursue a legal claim." *Id*. Plaintiff might show, for example, "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably

actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id*.

Plaintiff has not met this standard. He alleges only that "if the EMHC had provided Gunderson with access to adequate legal resources, he could have been successful in defeating the dismissal of the 2011 Action." (FAC ¶ 27.) The 2011 Action attacked the conditions of Plaintiff's confinement at EMHC. The district court thoroughly analyzed and dismissed those claims pursuant to the *Younger* doctrine. (*See* Case No. 11-cv-8562 (N.D. Ill.), R. 10.) Plaintiff took no further action in response to the district court's order dismissing the 2011 Action: he never filed a motion to reconsider and he never appealed the district court's decision. As explained above (*supra* pp. 7-10), no legal access could have saved those claims because they do not belong in federal court pursuant to the *Younger* doctrine. Accordingly, the Court grants Defendants' motion to dismiss Count I with prejudice.

### B.  Denial of Religious Leader (Count III)

Plaintiff alleges that Defendants have denied him his constitutional right to practice his religion, Hinduism, by failing to provide him with an appropriate spiritual leader. The FAC asserts that, on information and belief, the EMHC compensates spiritual leaders of other religions to visit the EMHC regularly, but did not do so for the spiritual leaders that it provided Plaintiff. (FAC, ¶¶ 49-50.)

While the free exercise clause of the First Amendment guarantees a liberty interest, "it does not guarantee that all religious sects will be treated alike in all respects." *Young v. Lane*, 922 F.2d 370, 377 (7th Cir. 1991) (citing *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 922 S. Ct. 1079, 31 L. Ed. 2d 263 (1972)). "Prisons do not need to provide every religious sect or group within a prison with identical facilities or personnel and need not employ chaplains representing every

faith among the inmate population." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (citing *Cruz*, 405 U.S. at 322, n. 2). "A plaintiff doesn't state a cause of action under the First Amendment merely because a prison allocates a disproportionately smaller amount of its religious budget to certain sects or provides clergy for one religion and not another." *Id.* at 718-19 (citing *Young*, 922 F.2d at 377-78).

Both parties contend that *Maddox* supports their argument. Defendants assert that *Maddox* instructs that the EMHC is not required to provide the relief Plaintiff seeks – a spiritual leader. Plaintiff argues that *Maddox* defeats Defendants' motion to dismiss Count III because the Seventh Circuit ultimately concluded that Maddox "has stated a claim 'plausible on its face' that he was denied a reasonable opportunity to exercise his religion without adequate penological justification." *Id*. at 720. Both parties' raise valid points. The Seventh Circuit noted that the district court split Maddox's claim into three separate counts: failure to compensate the outside spiritual leader in the same manner as other religious groups (Count II); allocation of a disproportionately small portion of the available religious budget to the Plaintiff's faith (Count III); and failure to permit Plaintiff and members of his faith to participate in group worship services (Count IV). *Id*. at 717-18. The Seventh Circuit stated that under the district court's narrow construction of the claims "a conclusion that these counts fail to state a claim perhaps can be understood." *Id*. at 718. The court, however, concluded that Maddox's complaint should be read "more broadly," and that it would examine the claims "in the aggregate." *Id*. at 719. The Seventh Circuit ultimately concluded that "based on the totality of the situation," Maddox stated a claim "plausible on its face" that the defendants denied him "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts. *Id*. at 719 (citing *Cruz*, 405 U.S. at 322).

13

Plaintiff here has not alleged such a broad claim. Rather, Plaintiff alleges that in 2011 he requested a Hindu spiritual leader. (FAC, ¶ 41.) In approximately 2012, the EMHC provided him with a spiritual leader who knew very little English and could not communicate with Plaintiff. (*Id.* ¶ 44.) On August 29, 2013, the EMHC provided Plaintiff with another spiritual leader who was a member of the ISKC, which, Plaintiff contends, derives its philosophy from the same foundational texts as Hinduism, but is a different religion. (*Id.* ¶¶ 46-47.) The FAC is silent as to whether Plaintiff lodged a formal complaint regarding the ISKC spiritual leader, but if he did, he did not give the EMHC much time to respond as he filed the FAC only one month after the EMHC appointed the ISKC spiritual leader. The only allegation in the FAC that Plaintiff was treated differently than other individuals at the EMHC is that "on information and belief, the EMHC compensates various spiritual leaders from other religions who come to the EMHC regularly to provide spiritual guidance to the EMHC's patients" and that "on information and belief, the EMHC did not compensate the two spiritual leaders" that Plaintiff consulted. (FAC, ¶¶ 50-51.)

Viewing the allegations in the FAC in the light most favorable to Plaintiff, they do not raise a plausible claim that Defendants denied him of "a reasonable opportunity of pursuing his faith" compared to the opportunity afforded his fellow residents at the EMHC. Rather, the FAC alleges that EMHC's first two attempts to provide Plaintiff with a spiritual leader did not satisfy Plaintiff. Accordingly, the Court grants Defendants' motion to dismiss Count III without prejudice. The Court grants Plaintiff leave to re-allege his claim of denial of a reasonable opportunity to pursue his faith keeping in mind counsel's Rule 11 obligations.

### C. Denial of Personal Property Without Due Process (Count VI)

Plaintiff alleges that under 405 ILCS 5/2-100 and 5/2-104, and Ill. Admin. Code Title 59 Sec. 110.30, he has a right to personal property. (FAC ¶ 78.) He further alleges that if he makes a request for personal property, and EMHC staff denies that request, EMHC staff must provide Plaintiff with a notice of restriction of rights, and the opportunity to re-submit the request to an EMHC staff member who did not play any part in the initial decision. (FAC ¶¶ 79-80.) Plaintiff asserts that in November 2011, he requested a personal printer and that Defendant Pharis orally denied the request because he felt that Plaintiff could meet his printing needs by using the printer in the EMHC library. (FAC ¶ 80.) Plaintiff contends that Defendant Pharis did not issue a formal notice of restriction of rights or provide him with an opportunity to appeal the decision to an EMHC staff member who played no part in the initial decision. (FAC ¶ 81.) Plaintiff also alleges that in December 2011 he requested an air purifier for his room and that Defendant Pharis told him he would be able to obtain one. (FAC ¶¶ 82-83.) When Plaintiff told Defendant Pharis that the air purifier he wanted measured 12 inches long, 10 inches high, and 6 inches wide, Defendant Pharis denied this request because it was "too large." (FAC ¶¶ 83-84.) As with the printer, Plaintiff asserts that Defendant Pharis did not issue him a formal notice of restriction of rights or provide him with an opportunity to appeal the decision. (FAC ¶¶ 84-85.)

For the purposes of the Due Process Clause, property interests must be found in state or federal law. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972); *see also Shango v. Jurich*, 681 F.2d 1091, 1097 (7th Cir. 1982). Procedural due process claims require a two-step analysis. First, the court determines whether the plaintiff was deprived of a protected interest. *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007). If so, the next step is to consider what process is due. *Id.*

As the United States Supreme Court teaches, "to determine whether due process requirements apply in the first place" courts "must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents*, 408 U.S. at 570-71. In short, "the threshold question in any due process challenge is whether a protected property or liberty interest actually exists." *Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 694 (7th Cir. 2013). A protected property interest is a legitimate claim of entitlement – not defined by the Constitution – but "by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577.

Here, Plaintiff does not allege that Defendants deprived him of his property. Rather, he alleges that Defendants denied his requests to obtain property – namely, a printer, an air purifier, and a water purifier. "A mere opportunity to acquire property, however, does not itself qualify as a property interest protected by the Constitution." *Barrows* 478 F.3d at 780 (7th Cir. 2007) (quoting *Head v. Chicago Sch. Reform Bd. of Tr.*, 225 F.3d 794, 802 (7th Cir. 2000). Losing the opportunity to acquire property does not constitute a deprivation. *Id.* (citing *Kyle v. Morton High Sch.*, 144 F.3d 448, 452 (7th Cir. 1988). Viewing the FAC in the light most favorable to Plaintiff, it alleges that Defendants denied him the opportunity to acquire property, which is not the deprivation of a protected interest. Accordingly, the Court grants Defendants' motion to dismiss Count VI with prejudice.

## CONCLUSION

For these reasons, the Court (1) grants Defendants' motion to dismiss Counts II, IV, V, and VII pursuant to the *Younger* doctrine; (2) grants Defendants' motion to dismiss Counts I and VI with prejudice; and (3) grants Defendants' motion to dismiss Count III without prejudice and grants Plaintiff leave to re-allege this claim, on or before May 27, 2014.

Dated: April 22, 2014                        ENTERED:

                                                  AMY J. ST. EVE
                                                  United States District Court Judge